1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANNY ATTERBURY,

11              Plaintiff,                    No. CIV S-05-1365 DAD P

12        vs.

13   LAURIE VANDIVER, et al.,

14              Defendants.                   <u>ORDER</u>

15   _____/

16              Plaintiff, a civil detainee currently confined at Napa State Hospital, is proceeding

17   pro se with a civil rights action seeking relief under 42 U.S.C. § 1983.  The matter is before the

18   court on defendant Vandiver's motion for summary judgment brought pursuant to Rule 56 of the

19   Federal Rules of Civil Procedure.  Plaintiff has filed an opposition to the motion.  Defendant has

20   filed a reply.  The parties have previously consented to Magistrate Judge jurisdiction for all

21   purposes.  <u>See</u> 28 U.S.C. § 636 (c).

22                                **BACKGROUND**

23              Plaintiff commenced this action on July 7, 2005, by filing a civil rights complaint

24   in which he alleges that he has been confined to Napa State Hospital for sixteen years pursuant to

25   his entry of plea before the El Dorado County Superior Court of not guilty by reason of insanity

26   /////

to two counts of attempted murder.[1] (Compl. at 4.) Plaintiff further alleges that his maximum

commitment date was July 18, 2005. (Id.) Plaintiff notes that he was scheduled to attend a

"Readiness and Settlement Conference" on August 15, 2005, and undergo a jury trial on August

23, 2005, because Napa State Hospital petitioned the El Dorado County District Attorney to ask

the El Dorado County Superior Court to extend his commitment for two years. (Id.) Plaintiff

contends that every time he attends any type of hearing, defendant Vandiver recommends that he

be housed in the El Dorado County Jail. (Id.) Plaintiff further contends that Vandiver

recommends housing patients in the county jail because it unnerves them and prevents them from

effectively defending themselves at their hearings and jury trials. (Id.) Plaintiff recalls that, "a

couple of years ago" when he was scheduled to attend a hearing in the El Dorado County

Superior Court, defendant Vandiver recommended that he be housed in the psychiatric/medical

section of the county jail. (Id. at 5.) Plaintiff alleges that he became sick at the jail and

ultimately abandoned his hearing. (Id.) Plaintiff contends that mental hospitals profit from

patients waiving their hearings and trials because they receive annual funding per patient. (Id. at

7-8.) Plaintiff summarily argues that temporarily housing him in the county jail pending his

court hearings violates the First, Fifth, Sixth, Eighth, and Fourteenth Amendments as well as

/////

/////

/////

---

[1]   Specifically, on August 30, 1989, after waiving his right to a jury trial, plaintiff submitted the matter of his guilt to the state trial court on the preliminary hearing transcript and pled not guilty and not guilty by reason of insanity to two counts of attempted murder, with enhancements for the infliction of great bodily injury. Based on his plea, the El Dorado County Superior Court found plaintiff "guilty, but not guilty by reason of insanity." (Id.) On that same date, the state trial court referred the matter to the community program director of the Conditional Release Program to prepare a recommendation as to whether plaintiff should be placed on out-patient status or confined in a state hospital or other treatment facility. On September 20, 1989, the trial court committed plaintiff to the custody of Atascadero State Hospital for the maximum term or until such time as plaintiff regained his sanity. See Atterbury v. Grazini, No. CIV S-03-1809 GEB DAD P (findings and recommendations issued Nov. 13, 2007).

state law.  (Id. at 5.)  Plaintiff requests injunctive and monetary relief.[2]  (Id. at 11.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See

---

[2]  In his complaint, plaintiff named defendants Vandiver, Weiner, and the El Dorado County Jail/Commander.  At screening, the court found that plaintiff's claims against defendant Weiner were legally frivolous because Weiner was an attorney appointed by the state to represent plaintiff and therefore he was not acting under color of state law.  The court found that plaintiff's claims against the jail commander were subject to dismissal.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

On July 29, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

## OTHER APPLICABLE LEGAL STANDARDS

I. <u>Civil Rights Act Pursuant to 28 U.S.C. § 1983</u>

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. <u>See</u> <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of <u>respondeat</u> <u>superior</u> and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not

1  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

2  II.  Relevant Sections of the California Penal Code

3          Plaintiff has been civilly committed pursuant to California Penal Code § 1026 et

4  seq., for approximately eighteen years.  Defendant Vandiver has been plaintiff's "community

5  program director" for more than a decade.  Where, as here, a civilly committed individual must

6  attend a court hearing outside of the geographical area of his state hospital, California Penal

7  Code §§ 1026.2 and 1026.5 authorize a community program director to designate an alternative

8  placement facility at which the individual will be housed pending his hearing.  Sections 1026.2

9  and 1026.5 also prescribe what types of facilities may be designated as alternative placement

10  facilities.  The relevant provisions state:

> Pending the hearing, the medical director or person in charge of the facility in which the person is confined shall prepare a summary of the person's programs of treatment and shall forward the summary to the community program director or a designee and to the court. The community program director or a designee shall review the summary and shall designate a facility within a reasonable distance from the court in which the person may be detained pending the hearing on the application for release.  The facility so designated shall continue the program of treatment, shall provide adequate security, and shall, to the greatest extent possible minimize interference with the person's program of treatment.

> A designated facility need not be approved for 72-hour treatment and evaluation pursuant to the Lanterman-Petris-Short Act. . . . However, a county jail may not be designated unless the services specified in subdivision (b) are provided and accommodations are provided which ensure both the safety of the person and the safety of the general population of the jail.  If there is evidence that the treatment program is not being complied with or accommodations have not been provided which ensure both the safety of the committed person and the safety of the general population of the jail, the court shall order the person transferred to an appropriate facility or make any other appropriate order, including continuance of the proceedings.

24  Cal. Penal Code §§1026.2(b)-(c) & 1026.5(b)(5)-(6) (emphasis added).

25  /////

26  /////

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. <u>Defendant's Statement of Undisputed Facts and Evidence</u>

Defendant's statement of undisputed facts is supported by a declaration by defendant Vandiver; a declaration by Jeanette Lovejoy, who is a Senior Legal Secretary employed by the Office of the Placer County Counsel; and citations to plaintiff's complaint and other filings in this action.

Defendant's evidence establishes the following facts: The Conditional Release Program" ("CONREP") is a state-funded and county-administered program. The Placer County Regional CONREP was paid for by the state in a lump sum contractual amount that was determined based on the outpatient census for the area served. Defendant Vandiver is a Placer County employee who became the community program director for the Placer County Regional CONREP in 1996.

Prior to July 2007, the Placer County Regional CONREP had two primary functions. First, it provided placement and treatment recommendations to individuals found mentally incompetent to stand trial and commuted under Penal Code § 1370. Second, it supervised an outpatient program for individuals found not guilty by reason of insanity and committed under Penal Code § 1026. In addition, CONREP's also made alternative placement facility recommendations for those found not guilty by reason of insanity and committed to a state hospital under Penal Code § 1026.5. Alternative placement recommendations, however, were a very small portion of the CONREP work, amounting to an average of only one or two recommendations per year.

When defendant Vandiver made an alternative placement facility recommendation for an individual who had a legal proceeding in another county, the county where the legal proceeding took place paid for any costs associated with the alternative placement. The Placer County Regional CONREP did not obtain a benefit or suffer a detriment and CONREP was not affected one way or another when a committed individual had a proceeding that he attended

outside of the county. Whether or not an individual went to a trial or hearing did not impact the CONREP and did not impact defendant Vandiver or her position with Placer County.

When making an alternative placement facility recommendation, defendant Vandiver obtained the essential treatment information from the committed individual's primary facility, discussed with potential alternative facilities their ability to provide for the individual's treatment and care without interruption, and determined whether the potential alternative facilities otherwise met the requirements of California Penal Code § 1026.5. There are only two alternative placement facilities in El Dorado County that generally meet the requirements of § 1026.5 – the El Dorado County Psychiatric Health Facility and the El Dorado County Jail. Defendant Vandiver used the El Dorado County Jail as an alternative placement facility when treatment at the jail could replicate the committed individual's treatment regime without any interruption in care. In defendant Vandiver's experience, many committed individuals who were placed in a county jail as an alternative placement facility did fine. If for whatever reason they did not, defendant Vandiver attempted to find an alternative placement. In cases in which Vandiver could find no suitable alternative placement, she worked with the trial court overseeing the proceedings to attempt to find an alternative.

The first time defendant Vandiver made an alternative placement facility recommendation for plaintiff, she recommended that he stay at the El Dorado County Psychiatric Health Facility. The second time defendant Vandiver made an alternative placement facility recommendation for plaintiff, she contacted the El Dorado County Jail to determine whether it would be an appropriate placement for him. She determined that it would be and made that recommendation. In the summer of 2005, defendant Vandiver was called upon again to make an alternative placement facility recommendation with respect to plaintiff. At that time she attempted to place him in the El Dorado Psychiatric Health Facility but that facility refused to accept him. A supervisory-level representative of the facility informed defendant Vandiver that during plaintiff's first placement there, he was too disruptive. Defendant Vandiver then

1  determined that the El Dorado County Jail would be an appropriate placement and made that

2  recommendation.

3          Before plaintiff was actually placed in the El Dorado County Jail in the summer of

4  2005, El Dorado County Superior Court Judge Edward Keller ordered an alternative placement.

5  Specifically, Judge Keller authorized plaintiff to be transported daily from the Napa State

6  Hospital to the El Dorado County Superior Court for the civil proceedings.

7          Effective July 1, 2007, the Placer County Regional CONREP program, which

8  previously included five to seven northern California counties, was reduced to a Placer County

9  only program.  Since then Placer County CONREP no longer services El Dorado County and,

10 therefore, defendant Vandiver is no longer in a position to make alternative placement facility

11 recommendations with respect to plaintiff in connection with his appearances in the El Dorado

12 County Superior Court.

13 II.  Plaintiff's Evidence

14         Plaintiff's opposition to the pending motion for summary judgment did not

15 include any document in which plaintiff admits or denies each of the facts presented in

16 defendant's statement of undisputed facts, as required by Local Rule 56-260.  In addition,

17 plaintiff did not submit any evidence, by way of declaration or otherwise, in connection with his

18 opposition to the motion.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.[3]

19         The only  evidence before the court from plaintiff appears in the form of his

20 lengthy declaration attached to his complaint filed in this action.  In that declaration, executed

21 July 5, 2005, plaintiff broadly states that "each and every time, without fail, that I attend any type

22 of hearing" defendant VanDiver recommends that plaintiff be placed in the El Dorado County

23 Jail.  (Compl. at 4.)  Plaintiff also states that defendant Van Diver always recommends that every

24

25         [3] As is the case with other documents he has filed with the court, plaintiff has signed his
   opposition to the pending motion under penalty of perjury, attesting that the "foregoing is true
   and correct of the best of my knowledge, information, memory and belief."  However, the
26 opposition merely presents plaintiff's arguments.

mental patient assigned to her caseload be housed in the county jails in the respective counties where they appear seeking release from confinement. (Compl. at 4.) Plaintiff also alleges "[u]pon information and belief" that the "predominant" reason defendant Van Diver does so is because confinement in county jail unnerves mental patients and motivates them to waive their hearings and trials, thereby creating a revenue stream for the state mental health department. (Id.) Plaintiff alleges, this is a practice among community program directors throughout California. (Id. at 5.) The remainder of plaintiff's rambling declaration is devoted to recounting details of his case, the unsatisfactory conditions of his confinement at the El Dorado County Jail presumably in 2002 or 2003, defendant Van Diver's discussions with him regarding the unavailability of placement alternatives in 2005 (when he was eventually ordered by Judge Keller to be transported back and forth to court from the State Hospital in Napa) and complaints about his attorney in the proceedings before the El Dorado County Superior Court. (Id. at 6-13.)[4]

III. Defendant's Arguments

Counsel argues in broad fashion that defendant Vandiver is entitled to summary judgment in her favor on all of plaintiff's claims. First, defense counsel argues that some of plaintiff's claims are time-barred under the two-year statute of limitations applicable to § 1983 claims. (Def.'s Mot. for Summ. J. at 5-6.) Counsel notes that plaintiff did not file his complaint in this action until July 7, 2005. Counsel contends that to the extent that plaintiff's claims are based on events that took place prior to July 5, 2003, including claims concerning his housing designation in 2002, they are untimely. (Id. at 6.)

Second, counsel argues that plaintiff has failed to state cognizable claims under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. (Def.'s Mot. for Summ. J. at 6-13.) Counsel contends that any cognizable First Amendment claim would have to be one that defendant Vandiver's alternative placement facility recommendation was made, at least in part,

---

[4] Attached to the declaration are pages bearing the title "Signatures to try to stop Sheriffs from Putting Patients in Jail when they go to Court" bearing sixty signatures.

to retaliate against plaintiff for seeking a hearing or trial with respect to his civil commitment. (Id. at 7-8.) Counsel argues, however, that there is no evidence that defendant Vandiver has a financial or other interest in whether plaintiff appears at a court proceeding and thus there is no evidence that she acted with a retaliatory intent. (Id. 10.) Rather, counsel contends, defendant Vandiver's placement recommendations were based on the availability of facilities in the geographical area that would accept plaintiff. (Id.) Counsel also summarily contends that plaintiff's complaint fails to state any cognizable claims under the Fifth, Sixth, or Eighth Amendment. (Id. at 11.) Finally, with regard to the Fourteenth Amendment, counsel argues that plaintiff has not been deprived of a liberty interest or property interest. (Id. at 12.) Alternatively, the defense argues that, to the extent that plaintiff has been deprived of a liberty or property interest and was entitled to procedural due process, he received the process due. In this regard, counsel points out that the statutory scheme provides that the trial court may make other arrangements if there is evidence that the alternative placement facility cannot continue a committed individual's treatment program or is otherwise unsafe. (Id. at 13.) Here, defense counsel notes that the trial court utilized this procedure in 2005 when it ordered that plaintiff be transported daily from the Napa State Hospital to the El Dorado County Superior Court for his court proceedings.

Next, counsel argues that defendant Vandiver is entitled to summary judgment on the basis of qualified immunity. (Def.'s Mot. for Summ. J. at 13-14.) In this regard, counsel argues that no case authority clearly established that any aspect of defendant Vandiver's conduct, including making alternative placement facility recommendations, was violative of plaintiff's constitutional rights. (Id. at 14.) Specifically, counsel asserts that no court has held that a misapplication of California Penal Code §§ 1026.2 and 1026.5 with respect to alternative placement facility recommendations constitutes a violation of the committed individual's constitutional rights.

/////

1    Finally, counsel argues that, in absence of a viable federal constitutional claims,

2  this court should dismiss any pendent state law claims. (Def.'s Mot. for Summ. J. at 14-15.)

3  IV. Plaintiff's Opposition

4    Regarding the statute of limitations, plaintiff argues that he filed this lawsuit as

5  soon as he had access to the courts following his confinement at the El Dorado County Jail in

6  2002. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 5.) On the substantive merits of defense

7  motion for summary judgment, plaintiff merely reiterates his contention that defendant Vandiver

8  routinely recommends that mental patients requesting release hearings be housed in county jails.

9  (Id. at 2.) Plaintiff again argues that defendant Vandiver is aware that most mental patients

10 would rather waive their court appearances than be required to stay in a county jail, thereby

11 ensuring their continued confinement. (Id.) Plaintiff also argues that he suffers from a spinal

12 injury and other medical conditions and should not be housed at a county jail because such

13 facilities do not permit him to have the medication he needs and they also limit his mobility. (Id.

14 at 3.) Plaintiff contends that defendant Vandiver was aware of his medical conditions but still

15 recommended that he be housed at the county jail. (Id. at 4.)

16 V. Defendant's Reply

17    In reply, defense counsel contends that plaintiff has failed to submit any evidence

18 suggesting that defendant Vandiver violated any of his constitutional rights. (Def.'s Reply at 1.)

19 Counsel further argues that nothing in the California Penal Code prevented defendant Vandiver

20 from providing plaintiff a housing assignment in the medical section of the El Dorado County

21 Jail. (Id. at 2.) Moreover, the defense argues that the evidence before the court established that

22 defendant Vandiver had no choice but to place plaintiff in the county jail due to plaintiff's own

23 disruptive behavior when he was previously housed at the El Dorado Psychiatric Health Facility.

24 (Id.) Defense counsel concludes that the undisputed facts show that defendant Vandiver did not

25 violate the United States Constitution or the California Penal Code in recommending that

26 plaintiff be housed in the El Dorado County Jail during his proceedings in the El Dorado County

1  Superior Court.  Counsel also reiterates the contention that defendant Vandiver is entitled to

2  summary judgment in her favor on qualified immunity grounds.  (Id. at 3.)

3  **ANALYSIS**

4  Below, the court will address each of the parties arguments with respect to the

5  defendant's pending summary judgment motion in turn.

6  I.  Statute of Limitations

7  Section 1983 does not prescribe a statute of limitations and therefore the forum

8  state's statute of limitations for personal injury claims and tolling provisions related thereto

9  applies.  Johnson v. State of California, 207 F.3d 650, 653 (9th Cir. 2000).  In California, the

10  applicable statute of limitations is two years.  See Cal Civ. Proc. § 335.1.  That statute of

11  limitations is tolled when a person is "imprisoned on a criminal charge, or in execution under the

12  sentence of a criminal court for a term of less than for life."  Cal Civ. Proc. § 352.1.  See also

13  Johnson, 207 F.3d at 654.  However, the statute of limitations is not tolled indefinitely but rather

14  delays the accrual of a cause of action for up to two years.  See Cal Civ. Proc. § 352.1.

15  Plaintiff's claims appear to date back to an unspecified date in 2002.  He was

16  committed pursuant to the jury's finding of not guilty by reason of insanity at the time those

17  claims accrued.  He filed this action on July 7, 2005.  If the statute of limitations is two years and

18  it may be tolled under these circumstances for up to an additional two years, then it appears that

19  all of plaintiff's claims were timely presented.  Defendant has failed to meet her burden in

20  moving for summary judgment on the basis of the statute of limitations that there exists no

21  genuine issue as to any material fact and that she is entitled to a judgment as a matter of law.  See

22  Fed. R. Civ. P. 56(c).  Therefore, defendant's motion for summary judgment on statute of

23  limitations grounds will be denied.

24  II.  Fourteenth Amendment

25  Plaintiff's principal claim is that defendant Vandiver violated his constitutional

26  rights when she recommended housing him in the El Dorado County Jail pending his court

hearings. Although plaintiff summarily argues that defendant violated his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments, his principal claim is that his substantive due process rights were violated.

Constitutional standards governing a § 1983 claim vary depending on whether the plaintiff is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution. In this case, plaintiff was found not guilty by reason of insanity and committed to the custody of the state for a maximum term or until such time as he regained his sanity. Although plaintiff is lawfully in state custody, he is not a "prisoner" subject to punishment by the state and is therefore entitled to more protection than that provided by the Eighth Amendment. See, e.g., Jones v. United States, 463 U.S. 354, 368 (1983) ("The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness."); Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982) (persons who have been involuntarily committed retain substantive liberty interests, which include the right to adequate food, shelter, clothing, as well as to medical care, safe conditions of confinement and freedom from unnecessary bodily restraint); see also Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979) (unlike sentenced inmates the state is not allowed to punish pretrial detainees and therefore the Due Process Clause rather than the Eighth Amendment applies); Jones v. Blanas, 393 F.3d 918, 933-35 (9th Cir. 2004) (civil detainees awaiting adjudication under Sexually Violent Predator Act may not be subjected to punitive conditions of confinement); Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1120-21 (9th Cir. 2003) ("substantive due process rights of incapacitated criminal defendants are not governed solely by the deliberate indifference standard").

Because of he is not subject to punishment but rather is being held after being found not guilty by reason of insanity, plaintiff's claim must be analyzed under the Fourteenth Amendment standard. See Youngberg, 457 U.S. at 315-16 ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement

than criminals whose conditions of confinement are designed to punish."); see also Jones, 393

F.3d at 931 (the more protective fourteenth amendment standard applies to conditions of

confinement when detainees have not been convicted of a crime); Huss v. Rogerson, 271 F.

Supp. 2d 1118, 1124-25 (S.D. Iowa 2003) (§ 1983 claims brought by detainee found not guilty of

murder by reason of insanity analyzed under Fourteenth Amendment not Eighth Amendment);

Endsley v. Luna, No. CV 06-04100 DSF, 2008 WL 3890382, *4-5 (C.D. Cal. May 23, 2008)

(detainee found not guilty of murder by reason of insanity stated cognizable substantive due

process claim in challenging condition of confinement). Cf. Andrews v. Neer, 253 F.3d 1052

(8th Cir. 2001) (en banc) (§ 1983 excessive force claims brought by daughter of detainee found

not guilty of murder by reason of insanity analyzed under objective reasonableness standard, not

the Eighth Amendment standard).

Under the Fourteenth Amendment Due Process Clause, conditions of confinement

that inflict punishment on plaintiff may not be imposed. See Bell, 441 U.S. at 539; Jones, 393

F.3d at 932. If it is determined that a condition of confinement is reasonably related to a

legitimate governmental interest, it may be concluded that the condition does not amount to

punishment. Conversely, if a court determines that a condition of confinement is arbitrary or

purposeless, it may conclude that the purpose behind the condition is punishment. Bell, 441 U.S.

at 539; see also Hydrick v. Hunter, 500 F.3d 978, 997 (9th Cir. 2007) (due process requires that

conditions of confinement bear a reasonable relation to the purpose for which persons are

committed); Jones, 393 F.3d at 932-33 (since a civil detainee is entitled to more considerate

treatment than one criminally detained, where the civil detainee is confined in conditions

identical to, similar to or more restrictive than, those which his criminal counterparts are held,

there arises a presumption that the civil detainee is being subjected to punishment).

The evidence before the court establishes that on three separate occasions,

defendant Vandiver made alternative placement facility recommendations for plaintiff. On the

first occasion, she recommended that he temporarily be housed at the El Dorado County

Psychiatric Health Facility.  On the second and third occasions, she recommended that plaintiff be temporarily placed in the medical section of the El Dorado County Jail during his proceedings in the El Dorado County Superior Court.  On each occasion, defendant Vandiver's recommendation was consistent with California law and based on her conclusion that the alternative placement facility recommended on each occasion could safely replicate plaintiff's treatment regime without interruption in care.

The evidence before the court also indicates that at the time of her third placement recommendation in 2005, the only option available in placing plaintiff was the medical section of the El Dorado County Jail.  In this regard, defendant Vandiver in 2005 attempted to place plaintiff at the El Dorado County Psychiatric Health Facility, but that facility would not accept plaintiff because supervisory personnel at that mental health facility reported that he had been too disruptive during his first stay.  Because defendant Vandiver was required to designate a facility within a reasonable distance from the Superior Court where the civil proceedings were being held, the El Dorado County Jail was the only other facility meeting the requirements of state law where plaintiff's presence at his hearing could be ensured by Vandiver.  Finally, the undisputed evidence before the court establishes that plaintiff was not in fact placed in the county jail in 2005 during his civil hearing because Judge Keller exercised his discretion under California Penal Code § 1026.5(b)(6) and ordered that plaintiff be transported from the State Hospital in Napa to the El Dorado County Superior Court on a daily basis until the proceedings before the court were concluded.

Plaintiff relies on his own bare allegations rather than any evidence in claiming that defendant Vandiver's recommendations were intended to inflict punishment on him.  There is no evidence before the court that defendant Vandiver did anything other than attempt to find alternative placements for plaintiff during his civil proceedings that would, in compliance with state law, permit him to participate in the judicial process.  Defendant Vandiver's recommendations were reasonably related to a legitimate governmental interest.  Although

plaintiff disagreed with those recommendations, in part, he has not provided any evidence

showing that they were intended to inflict punishment upon him.[5] It is far from clear that

defendant Vandiver could be held responsible for the conditions of plaintiff's temporary housing.

Even if that be the case, plaintiff has presented no evidence that during his brief stay at the El

Dorado County jail in either 2002 or 2003 that he was held for a prolonged period, housed in

general population, subject to restricted privileges, denied access to religious services, subjected

to strip searches at gun point or was otherwise exposed to conditions that were identical to those

in which the criminally detained were held. See Jones, 393 F.3d at 924, 935 (finding that where

a civilly detained individual was exposed to such conditions, the defendant Sheriff's personnel

would be required to rebut the presumption of a Fourteenth Amendment violation). The mere

fact that plaintiff was placed on an occasion in the medical section of a county jail during his

brief civil review proceedings does not establish that he was subject to improper punishment.

       Plaintiff has simply failed to respond to defendant Vandiver's evidence on

summary judgment with any evidence that would support his claim against her. "A scintilla of

evidence or evidence that is merely colorable or not significantly probative does not present a

genuine issue of material fact" precluding summary judgment. Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000). See also Summers v. A. Teichert & Son, Inc., 127 F.3d 1150,

1152 (9th Cir. 1997). On summary judgment the court is not to weigh the evidence or determine

the truth of the matters asserted but must only determine whether there is a genuine issue of

material fact that must be resolved by trial. See Summers, 127 F.3d at 1152. Nonetheless, in

order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of

---

[5] Plaintiff's speculation that defendant Vandiver's temporary placement recommendations were motivated by revenue concerns for the State Hospital at Napa are baseless. It is undisputed that defendant Vandiver is neither an employee of Napa State Hospital or of the state. Rather, she is a Placer County employee. Moreover, the undisputed evidence before the court demonstrates that neither defendant Vandiver nor the Placer County CONREP obtained a benefit, suffered a detriment, or were otherwise affected by plaintiff's temporary housing assignments or attendance at his civil hearings.

fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. See Addisu, 198 F.3d at 1134. Based on the evidence before the court with respect to this motion, no reasonable trier of fact could find that defendant Vandiver violated plaintiff's substantive due process rights in recommending alternative placements for him during civil proceedings in the El Dorado County Superior Court.

Accordingly, even under the Fourteenth Amendment substantive due process standard, this court concludes that plaintiff has failed to raise a question of material fact regarding the constitutionality of defendant Vandiver's recommendations. The court finds that defendant Vandiver has not violated plaintiff's rights under the Due Process Clause. See, e.g., Bell, 441 U.S. at 536-37 (ensuring detainee's presence at trial is a valid objective that may dispel any inference that conditions of confinement are intended as punishment).

To the extent that plaintiff claims that defendant Vandiver interfered with his right to receive adequate medical care by recommending that he temporarily stay in the medical section of the El Dorado County Jail, again it is the Fourteenth Amendment Due Process Clause not the Eighth Amendment Cruel and Unusual Punishment Clause that applies. See Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002). The Due Process Clause imposes, at a minimum, the same duty to provide adequate medical care to those incarcerated as imposed by the Eighth Amendment: "'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" Gibson, 290 F.3d at 1187 (quoting Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996)). Nonetheless, the court may properly look to decisions involving claims of inadequate medical care applying an Eighth Amendment standards. See Oregon Advocacy Center, 322 F.3d at 1121 n.11 (deliberate indifference standard is of use in substantive due process analysis).

Where a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105-06

(1976).  An Eighth Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.");  McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986).

Assuming plaintiff has alleged a cognizable claim against her in this regard, the evidence before the court establishes that defendant Vandiver was not deliberately indifferent to plaintiff's serious medical needs. Plaintiff merely declares in conclusory fashion that defendant Vandiver knew of his medical conditions and that he pled with her not to house him in the county jail. However, in recommending that plaintiff temporarily stay in the medical section of the county jail, defendant Vandiver did not deny, delay, or intentionally interfere with plaintiff's medical treatment. As the community program director of the Placer County Regional CONREP, defendant Vandiver was not directly or indirectly involved with plaintiff's medical care at the Napa State Hospital, the El Dorado Psychiatric Health Facility or the El Dorado County Jail. She did not did examine plaintiff, prescribe or administer his medication, or otherwise treat his medical conditions. Nor has plaintiff provided the court with any evidence indicating that defendant Vandiver participated in any way in his medical care.

As noted above, § 1983 requires that there be an actual connection or link between the actions of the defendant and the deprivation alleged to have been suffered by plaintiff. See Monell, 436 U.S. 658; Rizzo, 423 U.S. 362. Having not been personally involved in plaintiff's medical care, defendant Vandiver could not have subjected him to a deprivation of his constitutional right to adequate medical care within the meaning of § 1983. See Johnson, 588 F.2d at 743 (§ 1983 requires an affirmative act, participation in another's affirmative act or omission of an act legally required).

Insofar as defendant Vandiver was at all involved in plaintiff's medical care, the evidence before the court demonstrates that she considered plaintiff's medical needs before making an alternative placement facility recommendation. As recognized above, defendant Vandiver's alternative placement recommendations were consistent with state law and based on her findings that the two facilities she recommended could replicate and provide plaintiff's treatment without interruption and ensure plaintiff's safety and security. Moreover, defendant Vandiver was not authorized by state law to have plaintiff transported from Napa State Hospital

to the El Dorado County Superior Court as he desired.  See Cal. Penal Code §§1026.2(b)-(c) & 1026.5(b)(5)-(6) (providing that the community program director may only designate a facility within a reasonable distance from the court pending the hearing whereas the court is authorized to make any appropriate order).

Finally, the undisputed evidence before this court establishes that defendant Vandiver on one occasion recommended that plaintiff be temporarily placed in the El Dorado Psychiatric Health Facility and on a second occasion attempted to place him in that same psychiatric facility instead of the medical section of the El Dorado County Jail but was prevented from doing so because the psychiatric facility refused to accept plaintiff as a result of his previous disruptive behavior.  Thus, the evidence demonstrates that defendant Vandiver was not deliberately indifferent to plaintiff's medical needs.  Rather, defendant Vandiver's efforts on plaintiff's behalf evidence quite the contrary.  See, e.g., Huss, 271 F. Supp. 2d at 1126 ("Although the facility had prison-like conditions, it was still a suitable facility because of [plaintiff's] extensive criminal history, his mental diagnosis . . ., and the limited choices of facilities available.").

Accordingly, the court concludes that plaintiff has failed to raise a genuine issue of material fact regarding defendant Vandiver's involvement in his medical care during his temporary placements or in the adequacy of medical care plaintiff received during those temporary placements.  Under the evidence defendant is entitled to summary judgment in her favor as to such claims.

III.  First Amendment

To the extent plaintiff claims that defendant Vandiver retaliated against him by recommending he stay in the medical section of a county jail pending his court hearings, his claim is properly analyzed under the First Amendment.  As the Ninth Circuit has explained:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of

> (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff, however, has offered no evidence of a retaliatory motive on defendant Vandiver's part nor has he raised a genuine issue of material fact as to her intent in making temporarily house recommendations for him that included at least one stay in the medical section of a county jail. See, e.g., Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Plaintiff merely speculates that defendant Vandiver recommended him for temporary placement in the medical section of the El Dorado County Jail because it "unnerves mental patients and they cannot defend themselves at their hearings and jury trials . . . and this creates perpetual revenue for the mental health department." (Compl. at 4.) However, plaintiff's contentions regarding a motivation to increase state revenues are wholly unfounded. As noted above, neither defendant Vandiver nor the Placer County CONREP were affected, financially or otherwise, by plaintiff's temporary placements and attendance at his civil court proceedings.

As discussed above, defendant Vandiver's recommendations to temporarily house plaintiff in a county jail reasonably advanced a legitimate correctional goal. Contrary to plaintiff's beliefs, the evidence in this case demonstrates that defendant Vandiver's recommendations were based on suitability and the availability of alternative placement facilities in El Dorado County. Indeed, the defendant's first recommendation to house plaintiff at the El Dorado County Psychiatric Health Facility as well as her efforts to temporarily house him there again in 2005, demonstrate that her recommendations were not based on some plot to ensure plaintiff's perpetual confinement and continued revenue stream for the state nor to punish him for filing an application for release.

/////

/////

22

IV.  Fifth, Sixth, and Eighth Amendments

       To the extent plaintiff has attempted to state claims under the Fifth, Sixth, and Eighth Amendments, defendant Vandiver is entitled to summary judgment in her favor.  None of the provisions of the Fifth Amendment, such as the right against self-incrimination, the right against double-jeopardy, and the right to federal due process, apply in this case.  Nor do any of the provisions of the Sixth Amendment, such as the right to assistance of counsel, apply here.  Finally, as discussed above, plaintiff's principal claim and his inadequate medical care claim are more properly analyzed under the Fourteenth Amendment, not the Eighth Amendment.

V.  Qualified Immunity

              "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified immunity defense, the central questions for the court are (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendants' conduct violated a statutory or constitutional right and (2) whether the right at issue was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Although the court was previously required to answer these questions in order, the U.S. Supreme Court has very recently held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009).  If a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation.  Pearson, 129 S. Ct. at 820.

1    In this case, even if plaintiff had a substantive due process right not to be

2    temporarily housed in a county jail pending civil proceedings and defendant Vandiver violated

3    the right, such a right was not clearly established at the time of defendant Vandiver's actions.  In

4    fact, California law expressly authorized defendant Vandiver to make a recommendation that

5    plaintiff be housed in a county jail if she determined, as she did here, that such a facility could

6    provide plaintiff with uninterrupted treatment and ensure his safety and the safety of the general

7    population of the jail.  Cal. Penal Code §§1026.2(b)-(c) & 1026.5(b)(5)-(6).  No reasonable

8    official in defendant's position could have known at the time that his or her conduct, carried out

9    in accordance with a duly enacted state statute, violated a clearly established constitutional right.

10   See, e.g., Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994) ("[T]he existence of

11   a statute or ordinance authorizing particular conduct is a factor which militates in favor of the

12   conclusion that a reasonable official would find that conduct constitutional.").

13   Accordingly, to the extent that plaintiff seeks monetary damages in connection

14   with his substantive due process claim, defendant Vandiver is entitled to summary judgment in

15   her favor on grounds of qualified immunity.[6]

16   VI.  Supplemental Jurisdiction Over State Law Claims

17   A district court may decline to exercise supplemental jurisdiction over a claim "if

18   the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

19   1367(c)(3).  See also Binder v. Gillespie, 184 F.3d 1059, 1066 (9th Cir. 1999), cert. denied, 528

20   U.S. 1154 (2000) (citing Fang v. United States, 140 F.3d 1238, 1241 (9th Cir. 1998) and Voight

21   v. Savell, 70 F.3d 1552, 1565 (9th Cir. 1995)).  For the reasons addressed above, pursuant to the

22   granting of defendant's summary judgment motion all federal claims over which this court has

23

24   [6] Counsel argues only that defendant Vandiver is entitled to qualified immunity with
     respect to plaintiff's substantive due process claim.  Counsel has not addressed how that
     affirmative defense applies with respect to any inadequate medical care or retaliation claim
25   arguably brought by plaintiff.  Accordingly, the court's granting of summary judgment in favor of
     defendant on qualified immunity grounds applies only to plaintiff's claim for damages in
26   connection with his substantive due process claim.

original jurisdiction will be dismissed.

The balance of relevant factors points toward declining to exercise jurisdiction over any remaining state law claims. See Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994); Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992). In his complaint, plaintiff merely alleges in conclusory fashion that defendant Vandiver has violated his rights under state law. Plaintiff has not identified a particular provision of state law or explained how defendant Vandiver's alleged actions have resulted in a violation of plaintiff's rights under state law. Nevertheless, to the extent that plaintiff has asserted any state law claims, they will be dismissed without prejudice to refiling in state court.

## OTHER MATTERS

Plaintiff has requested that this case be re-assigned, presumably to a different judge, and that he be allowed to file a motion for reconsideration of all of the undersigned's orders. Plaintiff contends that he is being "faulted for errors that are not his making . . ." and states that he and other mental health patients "respect and look to the federal courts for protection from abuse and to right the wrongs that are being done to them . . . . " (Pl.'s Mot. to File Req. for Recons. filed March 12, 2008.) In his motion plaintiff appears to take particular issue with the undersigned's March 5, 2008 order. Therein, the court noted that a review of this action raised questions about whether plaintiff had diligently prosecuted the case. Defendant Vandiver filed the instant motion for summary judgment on July 26, 2007, but plaintiff failed to file an opposition or a statement of non-opposition to the motion. The court had previously ordered plaintiff to file an opposition or a statement of non-opposition. In response to the court's order, plaintiff instead filed a motion for leave to amend his complaint, together with a request to re-open discovery.

The court has construed plaintiff's instant request as a request that the undersigned recuse himself. Plaintiff is advised that "[a] judge is required to disqualify himself if his impartiality might reasonably be questioned, or if he has a personal bias or prejudice for or

against a party." <u>Hasbrouck v. Texaco</u>, 842 F.2d 1034, 1045 (9th Cir. 1988); 28 U.S.C. § 455(a). "The bias must stem from an extrajudicial source and not be based solely on information gained in the course of proceedings. <u>Hasbrouck</u>, 842 F.2d at 1045. "'[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" <u>In re Focus Media</u>, 378 F.3d 916, 930 (9th Cir. 2004) (quoting <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994). "'In and of themselves . . ., they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.'" <u>Id.</u>

Here, plaintiff's request for recusal is based on the court's orders issued in this case. However, plaintiff's mere disagreement with the court's rulings is not a proper or sufficient basis for recusal. Moreover, the undersigned has no conflict of interest or any degree of partiality and bias so that disqualification is appropriate or required. Nor is there any other reason for recusal in this matter. Accordingly, plaintiff's request will be denied.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's July 26, 2007 motion for summary judgment (Doc. No. 57) is granted;

2. Plaintiff's state law claims are dismissed without prejudice to refiling in state court;

3. Plaintiff's March 12, 2008 request that the undersigned recuse himself (Doc. No. 65) is denied; and

4. This action is dismissed.

DATED: March 31, 2009.

DAD:9
atte1365.57

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE